NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5734-14T1

CAROL M. COVER and DONOVAN
COVER, her husband,

 Plaintiffs-Appellants,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

 Defendant/Third-Party
 Plaintiff-Respondent,

v.

JANGJUMAY DUKUREH,

 Third-Party Defendant/
 Fourth-Party Plaintiff-
 Appellant,

v.

SHLOMO SINGER, ESQ., ROBERT
A. RASKAS, ESQ. and LAW OFFICES
OF ROBERT A. RASKAS,

 Fourth-Party
 Defendants-Respondents.
___________________________________________________

 Argued March 21, 2017 – Decided September 11, 2017

 Before Judges Messano, Suter and Guadagno.
 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Docket No.
 L-4156-13.

 Michael C. Meribe argued the cause for
 appellants (Michael C. Meribe, PC, attorneys;
 Mr. Meribe, of counsel and on the brief).

 Darren C. Kayal argued the cause for
 respondent Government Employees Insurance
 Company (Rudolph & Kayal, attorneys; Mr.
 Kayal, on the brief).

 Christopher J. Carey argued the cause for
 respondents Shlomo Singer, Esq., Robert A.
 Raskas, Law Offices of Robert A. Raskas
 (Graham Curtin, attorneys; Mr. Carey, of
 counsel and on the brief; Michelle M. O'Brien,
 on the brief).

PER CURIAM

 While attempting to make a U-turn, Jangjumay Dukureh drove

her car into the opposite lane of traffic and struck a car driven

by plaintiff Carol Cover.1 The damage to Dukureh's car was

minimal, and she suffered no injuries. The airbags in plaintiff's

car never deployed, but she was taken to the hospital with

complaints of neck and shoulder pain, treated and released. Two

years later, plaintiff underwent cervical spine surgery. At the

time of the accident, Dukureh was insured through an automobile

insurance policy issued by the Government Employees Insurance

1
 Plaintiff's husband Donovan Cover asserted a per quod claim in
the complaint. Because his claim is wholly-derivative of
plaintiff's claims, we use the singular "plaintiff" throughout
this opinion.

 2 A-5734-14T1
Company (GEICO), with bodily injury liability limits of $25,000

per person and $50,000 per occurrence.

 Plaintiff filed suit against Dukureh (the negligence action)

and, following a proof hearing, obtained a default judgment for

$260,512.38, and $20,000 in favor of her husband. More than nine

months later, plaintiff's counsel notified GEICO by phone and

letter of the judgment against its insured. GEICO assigned the

Law Offices of Robert A. Raskas to represent Dukureh, and, one of

its attorneys, Shlomo Singer, moved to vacate the default judgment.

Plaintiff opposed the motion.

 Contemporaneously, GEICO sent Dukureh a reservation of rights

letter, which stated that GEICO did

 not waive any of its rights or admit any
 obligations under the policy . . . .

 We are making this reservation of rights
 because you have not cooperated with our
 investigation. We have tried to contact you
 through telephone calls, in person contact by
 a field representative, and written
 correspondence and you have not responded.

 The judge denied the motion to vacate. Her handwritten

notation on the order said: "As the defendant has failed to

establish excusable neglect pursuant to R. 4:50-1. The defendant

was duly served and the defendant and his [sic] insurer were on

notice as to the existence of the claim, entry of default and

 3 A-5734-14T1
proof hearing." A second judge denied Dukureh's motion for

reconsideration.

 GEICO then notified plaintiff's counsel and Dukureh that it

was disclaiming any and all obligations under the policy based

upon Dukureh's "failure to cooperate . . . in the investigation

and subsequent handling of th[e] loss, including [her] failure to

timely notify [GEICO] of the suit." Plaintiff moved to amend her

complaint to include a count for declaratory relief against GEICO,

which GEICO opposed. Dukureh's counsel moved to be relieved. A

third judge denied both motions, reasoning the default judgment

entered more than one year earlier had concluded the negligence

action.

 Plaintiff then filed the instant complaint, seeking

declaratory relief against GEICO and asserting a claim of bad

faith. Two months later, after GEICO sought dismissal of the

complaint for plaintiff's failure to state a claim and to name

Dukureh as an indispensable party, Dukureh assigned her rights

under the policy to plaintiff, in return for plaintiff's agreement

not to attempt any collection of the default judgment. Plaintiff

moved for summary judgment, arguing GEICO was collaterally

 4 A-5734-14T1
estopped from disclaiming coverage because the first judge had

already decided the insurer was on notice.2

 The judge denied GEICO's motion to dismiss, concluding

plaintiff had standing to bring the suit. He also denied

plaintiff's motion for summary judgment (the August 2013 order).

Plaintiff sought reconsideration, which the judge denied by order

dated November 8, 2013 (the November 2013 order).

 GEICO answered and named Dukureh as a third-party defendant.

She never filed a responsive pleading, and the court entered

default against her. Two months later, plaintiff's counsel

notified GEICO that he was representing Dukureh, and requested

GEICO's consent to vacate the default. GEICO refused. A fourth

judge granted Dukureh's motion, vacated default and permitted

Dukureh, now represented by plaintiff's counsel, to file an answer

and counterclaim. The judge severed plaintiff's bad faith claim

against GEICO until the underlying coverage issue was decided.

 In June 2014, more than four years after filing the negligence

action and more than two years after obtaining default judgment

against Dukureh, plaintiff filed a fourth amended complaint

seeking declaratory relief against GEICO and adding claims for

2
 Plaintiff primarily asserted that the first judge's decision was
"law of the case," but also argued collateral estoppel as a basis
for relief. On appeal, plaintiff and Dukureh limit the argument
to collateral estoppel and res judicata.

 5 A-5734-14T1
negligence and consumer fraud. Represented by the same attorney,

Dukureh filed her answer and a fourth-party complaint against

Singer and the Raskas law firm (collectively, the Raskas

defendants) alleging legal malpractice. A fifth judge struck

GEICO's pleadings for failure comply with discovery orders.

 Motion practice continued unabated. In February 2015, Judge

Dennis F. Carey heard arguments on GEICO's motion to reconsider

and restore its pleading; the Raskas defendants' motion for summary

judgment; and plaintiff/Dukureh's motion to declare GEICO's

reservation of rights and disclaimer of coverage invalid, and

grant other relief, including permitting discovery on their bad

faith claims against GEICO.

 In a series of orders (the February 2015 orders), the judge

granted GEICO's motion for reconsideration, restored its pleadings

and ordered it to supply discovery on the coverage action within

thirty days. He denied plaintiff's/Dukureh's discovery motion and

motion for declaratory relief, and he granted the Raskas defendants

summary judgment dismissing the complaint as to them. The judge

entered another order in March (the March 2015 order) that extended

discovery and required plaintiff's counsel to supply electronic

copies of two letters he allegedly sent to GEICO in 2011, notifying

the company of the negligence action and the proof hearing.

 6 A-5734-14T1
 GEICO moved for summary judgment, and plaintiff/Dukureh

cross-moved for partial summary judgment, precluding GEICO from

re-litigating any issue as to notice based upon collateral estoppel

and res judicata.3 On July 28, 2015, the judge entered an order

(the July 2015 order) granting GEICO summary judgment dismissing

plaintiff's complaint with prejudice. In response to a letter

from plaintiff's counsel regarding disposition of his cross-motion

for partial summary judgment, the judge entered an order denying

the motion (the August 2015 order).

 Plaintiff and Dukureh (collectively, appellants) seek review

of the August 2013, November 2013, February 2015, March 2015, July

2015, and August 2015 orders. We affirm.

 I.

 Regarding the August 2013 order, plaintiff argues the judge

erred by denying her initial motion seeking declaratory relief

against GEICO because the doctrines of collateral estoppel and res

judicata precluded further litigation on the issue of notice. She

contends that issue was conclusively decided in the negligence

action. We disagree.

3
 GEICO also moved to dismiss based upon counsel's failure to
produce the 2011 letters previously ordered by the judge. This
motion was not heard because the return date was after the return
date of the summary judgment motions.

 7 A-5734-14T1
 "The term 'res judicata' refers broadly to the common-law

doctrine barring relitigation of claims or issues that have already

been adjudicated." Velasquez v. Franz, 123 N.J. 498, 505 (1991).

"Collateral estoppel, in particular, represents the 'branch of the

broader law of res judicata which bars relitigation of any issue

which was actually determined in a prior action, generally between

the same parties, involving a different claim or cause of action.'"

Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007) (quoting

Sacharow v. Sacharow, 177 N.J. 62, 76 (2003)). The party asserting

the bar must demonstrate:

 (1) the issue to be precluded is identical to
 the issue decided in the prior proceeding; (2)
 the issue was actually litigated in the prior
 proceeding; (3) the court in the prior
 proceeding issued a final judgment on the
 merits; (4) the determination of the issue was
 essential to the prior judgment; and (5) the
 party against whom the doctrine is asserted
 was a party to or in privity with a party to
 the earlier proceeding.

 [First Union Nat'l Bank v. Penn Salem Marina,
 Inc., 190 N.J. 342, 352 (2007) (quoting
 Hennessey v. Winslow Twp., 183 N.J. 593, 599
 (2005)).]

Even when these requirements are met, collateral estoppel will not

apply if the result is inequitable. Allen v. V & A Bros., 208

N.J. 114, 138 (2011).

 "[C]ollateral estoppel applies only to matters or facts that

are directly in issue and are necessary to support the judgment

 8 A-5734-14T1
rendered in the prior action. The doctrine does not extend to 'any

matter which came collaterally in question, . . . nor . . . any

matter to be inferred by argument from the judgment.'" Allesandra

v. Gross, 187 N.J. Super. 96, 105 (App. Div. 1982) (alteration in

original) (emphasis added) (quoting Mazzilli v. Accident & Cas.

Ins. Co., 26 N.J. 307, 315-16 (1958)).

 The only issues in the negligence action were whether Dukureh

was negligent and if so, whether that negligence was a proximate

cause of plaintiff's damages. The proof hearing quantified those

damages. Whether GEICO had notice of plaintiff's claim was not

an issue necessary to support the judgment against Dukureh, and

Singer was representing only Dukureh's interests, not GEICO's,

when he sought to vacate default. See, e.g., Hartford Acci. &

Indem. Co. v. Aetna Life & Casualty Ins. Co., 98 N.J. 18, 24 (1984)

(discussing potential conflict of interest occasioned by having

one attorney represent insured and at the same time represent the

insurer challenging coverage). The notation in the first judge's

order that GEICO had notice was not a fact necessary to decide

whether to vacate the default judgment entered against Dukureh.

 Although GEICO was not a party to the negligence action,

plaintiff argues GEICO was in privity with Dukureh. "'Generally,

one person is in privity with another and is bound by and entitled

to the benefits of a judgment as though he was a party when there

 9 A-5734-14T1
is such an identification of interest between the two as to

represent the same legal right.'" Zirger v. Gen. Accident Ins.

Co., 144 N.J. 327, 338-39 (1996) (quoting Moore v. Hafeeza, 212

N.J. Super. 399, 403-04 (Ch. Div. 1986)).

 Here, the legal right Dukureh sought to vindicate was relief

from a default judgment entered without her participation.

Although GEICO had an interest in providing a defense to its

insured, it did not share the same interest as Dukureh. If the

default were not vacated, GEICO could disclaim responsibility for

the judgment based on Dukureh's lack of cooperation, which it

eventually did, or limit its obligation to the $25,000 policy

limit.

 In short, collateral estoppel did not bar GEICO's litigation

of the issue of notice. We affirm the August 2013 order.

Plaintiff's arguments regarding the November 2013 order denying

her motion for reconsideration lack sufficient merit to warrant

discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm

the November 2013 order.

 II.

 Appellants argue we must reverse Judge Carey's February 2015

order granting summary judgment to the Raskas defendants. They

contend the matter was not ripe for summary judgment because

discovery was outstanding; Dukureh did not make an illegal

 10 A-5734-14T1
assignment of a tort action, i.e., her legal malpractice claim,

to plaintiff; and the judge misapplied summary judgment standards

to conclude Dukureh suffered no damages and the Raskas defendants

did not breach their professional duty. We need not address all

these claims because Dukureh could not prove any damages resulted

from the Raskas defendants' allegedly negligent representation.

 On this issue in particular, further discovery was not

necessary. As the Court has said:

 A motion for summary judgment is not premature
 merely because discovery has not been
 completed, unless plaintiff is able to
 "demonstrate with some degree of particularity
 the likelihood that further discovery will
 supply the missing elements of the cause of
 action."

 [Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J.
 544, 555 (2015) (quoting Wellington v. Estate
 of Wellington, 359 N.J. Super. 484, 496 (App.
 Div.), certif. denied, 177 N.J. 493, (2003);
 Auster v. Kinoian, 153 N.J. Super. 52, 56,
 (App. Div. 1977)).]

Dukureh argues she was entitled to further discovery regarding

Geico's retention of the Raskas law firm, yet those circumstances

pertain only to the question of whether Singer's legal

representation was deficient. Dukureh herself provided all

information relevant to the damages she allegedly suffered in

certifications and deposition testimony.

 11 A-5734-14T1
 We consider the grant of summary judgment de novo, using the

"'same standard as the motion judge.'" Globe Motor Co. v. Igdalev,

225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22,

38 (2014)). Providing all favorable inferences to the non-moving

party, Rule 4:46-2(c), our "task is to determine whether a rational

factfinder could resolve [an] alleged disputed issue in favor of

the non-moving party." Perez v. Professionally Green, LLC, 215

N.J. 388, 405-06 (2013). An opposing party must "do more than

'point[] to any fact in dispute' in order to defeat summary

judgment." Globe Motor Co., supra, 225 N.J. at 479 (alteration

in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142

N.J. 520, 529 (1995)). We review issues of law de novo and accord

no deference to the trial judge's legal conclusions. Nicholas v.

Mynster, 213 N.J. 463, 478 (2013).

 "[A] legal malpractice action has three essential elements:

'(1) the existence of an attorney-client relationship creating a

duty of care by the defendant attorney, (2) the breach of that

duty by the defendant, and (3) proximate causation of the damages

claimed by the plaintiff.'" Jerista v. Murray, 185 N.J. 175, 190-

191 (2005) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)).

Dukureh stated in her certification:

 I retained Mr. Meribe to represent me in this
 case. He explained to me the advantages and
 disadvantages of a joint representation and I

 12 A-5734-14T1
 fully consented to his handling this matter
 on my behalf. Indeed, I do not see any
 disadvantage from my point of view. He is not
 charging me any fees and my retainer agreement
 states that he can only be paid from whatever
 he can collect from GEICO for the breach of
 contract. With regard to the judgment
 obtained by Plaintiff in the prior lawsuit,
 Plaintiff has already stipulated that she has
 waived her right to enforce the judgment in
 exchange for my giving her an Assignment of
 Right.

 [Emphasis added.]

Judge Carey found as a result "there are no damages that could

even possibly result from the case . . . in light of the quid pro

quo of the assignment." Dukureh may continue to have a judgment

on record against her, but success in the legal malpractice suit

would not have discharged the judgment. Dukureh's contentions to

the contrary are meritless.

 III.

 Appellants contend we should reverse the February 2015 order

denying them declaratory relief because GEICO's December 2012

reservation of rights (ROR) and April 2013 disclaimer were invalid

as a matter of law, and GEICO was estopped from disclaiming

coverage or otherwise waived its right to disclaim coverage.

Because these arguments are essentially repeated by appellants as

to Judge Carey's July 2015 order granting summary judgment to

GEICO, and his August 2015 order denying plaintiff's cross-motion

 13 A-5734-14T1
for partial summary judgment and declaratory relief, we choose to

address the issues only once after first providing some context

from the motion record.

 It is undisputed that Dukureh notified GEICO of the accident

on March 26, 2008, approximately one week after it occurred. Its

claims adjusters attempted to reach her by telephone on April 24,

25, 30, and August 21, 2008, without success. Adjusters also

mailed letters to her on April 25 and August 22, 2008, asking that

she contact them. GEICO's activity logs show no response from

Dukureh to the phone calls or letters.

 Meanwhile, GEICO contacted plaintiff's attorney, requesting

information and attempting to schedule independent medical

examinations. GEICO never received signed HIPAA authorizations

that would allow it to obtain plaintiff's medical records. On

August 27, 2008, a claims adjuster wrote to plaintiff's counsel:

"Based upon the information we received to date, it does not appear

your client's claim will pierce the NJ Verbal Tort Threshold

. . . . If you are in receipt of information to the contrary,

please send it to my attention within 30 days." GEICO attempted

to schedule independent medical examinations of plaintiff in

September 2008, but these appointments were cancelled. On October

10, 2008, an adjuster mailed a letter to Dukureh explaining that

GEICO had been unable to resolve plaintiff's injury claim and

 14 A-5734-14T1
directing her to contact him immediately if she received legal

documents from plaintiff's counsel.

 Plaintiff served the complaint on Dukureh on August 31, 2010.

At her deposition, Dukureh stated that someone came to her home

to serve her with papers, but she does not speak nor read English,

and she did not know what the documents said. Despite not

understanding the documents, Dukureh said she called GEICO and

told them that somebody at the door handed her papers. GEICO had

no record of receiving a phone call from Dukureh in 2010.

 Dukureh's son was deposed in 2015, after plaintiff initially

moved for declaratory relief, but before GEICO moved for summary

judgment. Contrary to his mother's version of events, the son

stated his mother gave him the documents involving plaintiff's

suit, and he called GEICO. He could not recall who he spoke to.

 As noted, the record contains copies of letters sent by

plaintiff's counsel to GEICO, in January 2011, advising it of

plaintiff's suit, and in December 2011, advising it of the proof

hearing. GEICO's representatives denied ever receiving these

letters, explaining that in 2011, no documents were entered in

GEICO's activity log or claim file for the Dukureh claim.

Plaintiff's counsel was unresponsive to GEICO's discovery demands

that he produce the electronic file copies of the 2011 letters,

and, ultimately, the March 2015 order required plaintiff's counsel

 15 A-5734-14T1
to produce the electronic files. They were not produced prior to

the July 2015 order granting GEICO summary judgment.

 Once GEICO received notice of the default judgment on

November 29, 2012, it attempted to contact Dukureh by mail, by

telephone, and by visiting her home. All these attempts were

unsuccessful. It appointed counsel to represent her, and he

attempted to protect Dukureh's interests by immediately filing a

motion to vacate the default judgment, as outlined above.

 A.

 Plaintiff argues the 2012 ROR letter was legally deficient

because it was served after GEICO had commenced representation and

failed to inform Dukureh that she had the right to reject

representation under its terms. We disagree.

 Our courts have long recognized the efficacy of an ROR letter,

and the right of the carrier to assume defense of its insured

under that reservation upon her consent, which may be inferred by

the insured's silence. Merchs. Indem. Corp. of N.Y. v. Eggleston,

37 N.J. 114, 126 (1962). However, "to spell out acquiescence by

silence, the letter must fairly inform the insured that the offer

may be accepted or rejected." Id. at 128.

 It is undisputed that GEICO's December 2012 ROR letter did

not advise Dukureh that she need not consent and could retain her

 16 A-5734-14T1
own counsel. Plaintiff argues that GEICO should be estopped from

relying on the ROR because of this infirmity, but we disagree.

 In Griggs v. Bertram, 88 N.J. 347, 356 (1982), the Court

explained that the rationale of estoppel in the context of an

absent or invalid ROR letter "is that once the insurer has

acknowledged the claim and assumes control of the defense, the

insured is justified in relying upon the carrier to protect it

under its policy." Here, however, Dukureh denied knowing about

the lawsuit or the default judgment, so she would have had no

reason to believe a legal defense was necessary. The ROR letter

did not induce Dukureh to rely on GEICO for a defense to

plaintiff's suit.

 Moreover, contrary to plaintiff's arguments, GEICO did not

exercise exclusive control of the defense in the negligence action

for any appreciable time, a factor that might otherwise weigh in

favor of the successful invocation of estoppel. See, e.g., Sneed

v. Concord Ins. Co., 98 N.J. Super. 306, 320 (App. Div. 1967)

(holding that estoppel was warranted where insurer maintained

exclusive control over claim for "substantial period" of twenty-

two months after learning that insured had breached policy

conditions).

 Upon receiving notice of the default judgment, GEICO retained

the Raskas defendants and sent the ROR letter. Within three

 17 A-5734-14T1
months, their representation of Dukureh ended, after a motion to

vacate default was denied, and they unsuccessfully sought

reconsideration. GEICO's representation did not materially impair

Dukureh's right to defend herself; the default judgment had already

been entered against her.

 B.

 In initially seeking declaratory relief, and again in

opposing GEICO's summary judgment motion and moving for partial

summary judgment and declaratory relief, plaintiff argued that

GEICO's disclaimer was ineffective because GEICO failed to

demonstrate how Dukureh's breach of the policy's cooperation

provisions resulted in the irretrievable loss of substantial

rights in defense of the negligence action. Plaintiff reiterates

the arguments here, but we are unpersuaded.

 In Cooper v. Government Employees Insurance Co., 51 N.J. 86,

94 (1968), the Court reasoned it would be unfair for an insured

to lose insurance coverage for violating a notice provision when

there is no likelihood that the insurer was prejudiced by the

breach. Accordingly, it held that "the carrier may not forfeit

the bargained-for protection unless there are both a breach of the

notice provision and a likelihood of appreciable prejudice. The

burden of persuasion is the carrier's." Ibid. (footnote omitted);

see Gazis v. Miller, 186 N.J. 224, 230-31 (2006) (discussing

 18 A-5734-14T1
various contexts in which New Jersey courts have applied Cooper).

We have said:

 "[T]wo variables" generally should be
 considered in determining whether an insurer
 was appreciably prejudiced by a breach of the
 insured's duties under the policy: first,
 "whether substantial rights have been
 irretrievably lost" as a result of the
 insured's breach, and second, "the likelihood
 of success of the insurer in defending against
 the accident victim's claim" had there been
 no breach.

 [Hager v. Gonsalves, 398 N.J. Super. 529, 537
 (App. Div.) (quoting Sagendorf v. Selective
 Ins. Co. of Am., 293 N.J. Super. 81, 93 (App.
 Div. 1996)), certif. denied sub nom. High
 Point Ins. Co. v. Rutgers Cas. Ins. Co., 195
 N.J. 522 (2008).]

 Here, Dukureh failed to respond to any inquiries, leaving

Singer ill-equipped to vacate the default judgment in the first

instance, and leaving GEICO ill-equipped to defend Dukureh. A

"total lack of cooperation" is relevant when considering whether

an insurer is appreciably prejudiced. Id. at 538. Moreover,

despite plaintiff's argument to the contrary, although the traffic

accident was clearly Dukureh's fault, it is not so clear that

plaintiff could demonstrate the injuries proximately caused by the

accident pierced the verbal threshold4 or that her damages exceeded

the policy limits.

4
 N.J.S.A. 39:6A-8(a).

 19 A-5734-14T1
 As noted, there was little damage to both vehicles. Plaintiff

was treated and released from the hospital on the day of the

accident; x-rays revealed no fracture. It is true that an MRI in

July 2008 revealed a disc herniation in her cervical spine, but

plaintiff never underwent an independent medical examination. In

sum, it cannot be disputed that Dukureh breached the cooperation

provisions of the policy, and GEICO demonstrated it was appreciably

prejudiced by that breach.

 Plaintiff argues summary judgment was inappropriate because

there were material disputed facts as to whether GEICO was on

notice of the suit prior to default judgment being entered against

Dukureh. She relies upon Dukureh's statements regarding her calls

to GEICO and her counsel's 2011 letters notifying the company of

the suit and default hearing.

 As demonstrated, Dukureh's version of how she received

plaintiff's summons and complaint, and what she did about it,

differed markedly from her son's testimony. Further, the business

records of the insurer document none of these alleged contacts,

nor is there any other proof. See, e.g., Martin v. Rutgers Cas.

Ins. Co., 346 N.J. Super. 320, 323 (App. Div. 2002) (holding

proponent's self-serving statement insufficient to create material

factual dispute when contradicted by unequivocal lack of

supporting documentary evidence in the record).

 20 A-5734-14T1
 The letters from plaintiff's counsel are puzzling. Although

they appear twice in the appellate record as exhibits supporting

plaintiff's motion practice, they were never accompanied by a

certification from counsel, nor did counsel furnish any proof of

service of these letters upon GEICO. GEICO's records do not

indicate that it ever received the letters.

 Further, there is no explanation in the record why counsel

waited nine months to notify GEICO of the default judgment.

Assuming arguendo GEICO's abject failure to respond to the second

letter in December 2011, advising the insurer of the proof hearing,

it is truly remarkable that the company flew into action

immediately upon receipt of counsel's notification of the default

judgment in November 2012. Based on this record, the letters

alone do not raise a disputed material fact that GEICO was on

notice of the suit.

 In short, plaintiff was not entitled to partial summary

judgment when she sought declaratory relief, and Judge Carey

correctly granted GEICO summary judgment and dismissed plaintiff's

complaint. The balance of plaintiff's arguments to the contrary

on this issue lack sufficient merit to warrant discussion. R.

2:11-3(e)(1)(E). We affirm the February 2015 order denying

plaintiff declaratory relief, the July 2015 order granting GEICO

 21 A-5734-14T1
summary judgment and the August 2015 order denying appellant's

motion for partial summary judgment.5

 C.

 The arguments appellants raise with respect to other

provisions of the February 2015 orders that granted GEICO's motion

for reconsideration and restored its pleadings and denied

appellants motion to compel the depositions of certain GEICO

employees and impose sanctions similarly require little

discussion.

 "It is well established that 'the trial court has the inherent

power, to be exercised in its sound discretion, to review, revise,

reconsider and modify its interlocutory orders at any time prior

to the entry of final judgment.'" Lombardi v. Masso, 207 N.J.

517, 534 (2011) (quoting Johnson v. Cyklop Strapping Corp., 220

N.J. Super. 250, 257 (App. Div. 1987), certif. denied, 110 N.J.

196 (1988)). Similarly, resolution of discovery disputes,

including the imposition of sanctions, are broadly committed to

the discretion of the trial court. Pomerantz Paper Corp. v. New

Community Corp., 207 N.J. 344, 371 (2011). Judge Carey did not

mistakenly exercise his discretion.

5
 In light of our decision, appellants' challenge to the March
2015 order in which Judge Carey, among other things, compelled the
electronic files of the 2011 letters be produced is moot.

 22 A-5734-14T1
Affirmed.

 23 A-5734-14T1